IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MATTHEW F., )
)
      Plaintiff, )
)
v. ) 1:24CV307
)
FRANK BISIGNANO, )
Commissioner of Social Security,[1] )
)
      Defendant. )

<u>MEMORANDUM OPINION AND ORDER</u>
<u>OF UNITED STATES MAGISTRATE JUDGE</u>

Plaintiff Matthew F. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security ("Defendant") denying his claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.    <u>PROCEDURAL HISTORY</u>

Plaintiff protectively filed his application for DIB on June 1, 2021, alleging a disability onset date of May 19, 2021. (Tr. at 20, 294-300.)[2] His application was denied initially (Tr. at 113-20, 131-35) and upon reconsideration (Tr. at 121-30, 142-61). Thereafter, Plaintiff

---

[1] The United States Senate confirmed Frank Bisignano as the Commissioner of Social Security on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #5].

requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 162-63.) On March 30, 2023, Plaintiff, along with his attorney, attended the subsequent telephone hearing, at which Plaintiff and an impartial vocational expert ("VE") testified. (Tr. at 20, 49-82.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 42-43), and, on February 8, 2024, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-7).

II.     LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the [claimant] is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. (Tr. at 22.) Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> [B]ipolar disorder, unspecified; schizoaffective disorder, unspecified; insomnia; and alcoholism[.]

(Tr. at 23.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 23-28.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform a full range of work at all exertional levels, but with the following, non-exertional limitations:

> [Plaintiff] is limited to unskilled work and should have all safety precautions [including] no work on ladders, ropes or scaffolds; no work at unprotected heights or around dangerous moving machinery[; and n]o commercial driving.

5

> He retains the capacity to understand and remember simple one and two step instructions as defined by the Dictionary of Occupational Titles. [Plaintiff] retains the capacity to concentrate and remain on task on these simple one and two step jobs for two hour periods over an eight-hour day throughout a forty-hour workweek with all customary breaks. [He] can have occasional contact with the general public but no direct contact with the general public such as a retail sales or information clerk. He retains the social interaction capacity for routine interactions with coworkers and supervisors on an occasional basis.

(Tr. at 28.) At step four of the analysis, the ALJ determined that all of Plaintiff's past relevant work exceeded his RFC. (Tr. at 41.) However, the ALJ determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the VE as to these factors, he could perform other jobs available in the national economy. (Tr. at 42.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 42-43.)

Plaintiff now contends that the ALJ "erred by failing to apply the correct legal standards when evaluating [Plaintiff's] psychological impairments." (Pl. Br. [Doc. #12] at 1.) In making this challenge, Plaintiff primarily argues that the ALJ erred in evaluating Plaintiff's symptoms and the limiting effects of his impairments by relying on the lack of "objective" medical evidence to support his contentions.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. In Arakas v. Commissioner of Social Security, 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step, objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

983 F.3d at 95. The Fourth Circuit later affirmed and expanded its previous holdings when issuing Shelley C. v. Commissioner of Social Security, 61 F.4th 341, 361-62 (4th Cir. 2023). In Shelley C., the Court explained that some conditions, including major depression, do not manifest themselves in objective signs and symptoms. Id. "[B]ecause of the unique and subjective nature of [such impairments], subjective statements from claimants [in these cases] 'should be treated as evidence *substantiating* the claimant's impairment.'" Id. (quoting Arakas, 983 F.3d at 97-98).

In this case, as noted by Plaintiff, the ALJ included language that appeared to require supporting objective evidence, in contradiction to the Fourth Circuit's directives. For example, when explaining his basis for discounting the severity of Plaintiff's symptoms, the ALJ found as follows:

> [Plaintiff] has multiple medically determinable mental impairments that could reasonably be expected to produce some of the alleged symptoms and functional limitations; however, the severity of his condition is not supported

> by the objective findings. As will be discussed in more detail below, the record clearly shows [that Plaintiff's] condition is stable and does not significantly affect his ability to perform work activity.

(Tr. at 29 (emphasis added).) The ALJ repeatedly noted normal mental status examinations and unremarkable examinations. (Tr. at 29-32 (citing Tr. at 687-89 (January 8, 2018), 659-86 (April 11, 2018, July 10, 2018, October 1, 2018, January 2, 2019, April 3, 2019, July 2, 2019, October 2, 2019, January 2, 2020), 643-46 (December 1, 2020)).) These records reflect that in the years prior to the May 2021 alleged onset date, Plaintiff was suffering with symptoms of bipolar disorder and schizoaffective disorder, with ongoing adjustments in his medication, but was generally stable. The records further reflect increasing symptoms after May 2021. At visits in June 2021, he reported panic episodes with angry outburst and manic episodes, and on exam his mood was anxious and restless, but the ALJ noted the otherwise normal examination, oriented to time, person, and place. (Tr. at 31 (citing Tr. at 630-38, 625-29).) Notably, the next month, in July 2021, Plaintiff was involuntarily hospitalized on petition by the county, based on homicidal ideation and being a danger to himself and others. (Tr. at 31, 694-768.) The ALJ again found that at visits following Plaintiff's release, mental status examinations were "generally unremarkable" and his providers continued to adjust his medications. (Tr. at 32.) The ALJ also summarized the consultative examination in September 2021, where Plaintiff reported auditory hallucinations and his belief that other people could read his mind, but the ALJ also noted that on examination memory was intact, and stream of thought was logical and orderly. (Tr. at 33.) The Consultative Examiner, Dr. Lucas, found that Plaintiff would likely experience intermittent difficulty with stress tolerance and coping with vocational pressures secondary to schizoaffective disorder, but the ALJ did not find the

8

Consultative Examiner's opinion persuasive. (Tr. at 34, 545.) Plaintiff was again hospitalized for worsening psychiatric symptoms in December 2021, June 2022, July 2022, and August 2022, with three separate psychiatric hospitalizations of roughly 34 days total in the 10-month period prior to the hearing, with auditory hallucinations and paranoid delusions. (Tr. at 35-37, 1054-73, 961-1053, 1078-125, 1126-69.)[5] However, the ALJ again noted examinations that were "completely unremarkable, other than [Plaintiff's] mood and affect being anxious." (Tr. at 35, 37.) In evaluating Plaintiff's symptoms, the ALJ further noted that "[w]hile he complains people can hear what he is thinking in his mind, he is consistently noted as alert and oriented x 3." (Tr. at 38.) The ALJ concluded that "the objective medical evidence supports that when [Plaintiff] is compl[ia]nt with his medications and compl[ia]nt with his doctor's instructions not to self-medicate with beer, his condition significantly improved to allow him to perform work as noted in the residual functional capacity." (Tr. at 32.) As noted above, this analysis appears to reflect a determination based on the lack of objective medical evidence supporting Plaintiff's symptoms, and a disregard of his ongoing symptoms of bipolar disorder and schizophrenia, including auditory hallucinations and paranoia, based on Plaintiff being oriented to person, place and time and otherwise having what the ALJ viewed as "unremarkable" examinations.

Moreover, Defendant contends that the ALJ properly relied on "Plaintiff's significant improvement when he was sober and compliant with medication" and the "largely unremarkable mental status findings when he was compliant." (Def. Br. [Doc. #13] at 12.)

---

[5] At the hearing, the VE testified that this level of absenteeism would preclude employment and would result in termination. (Tr. at 76-77.)

On this point, Defendant contends that the ALJ properly emphasized that Plaintiff's episodes of increased symptomology during the time period at issue primarily stemmed from his failure to fully comply with medical treatment recommendations, including correct medication usage, follow-up appointments, and maintaining sobriety. (See, e.g., Tr. at 30, 32-33, 35.) However, as numerous courts, including those in this Circuit, have explained, an ALJ may not rely on noncompliance to discount the severity of a claimant's mental impairments without also considering <u>why</u> the claimant was noncompliant. An ALJ who fails to undertake the second part of this analysis errs, because it is axiomatic that

> noncompliance [itself] may be a symptom of mental illness. See <u>McKoy v. Saul</u>, No. 7:19-CV-00223-FL, 2020 WL 8084961, at *9 (E.D.N.C. Nov. 22, 2020) (finding that citing a mental health patient's medication non-compliance, without exploring the reasons underlying it, offered little in the way of substantial evidence to support the ALJ's RFC assessment), <u>report and recommendation adopted</u>, 2021 WL 76956 (E.D.N.C. Jan. 8, 2021); <u>Turner v. Saul</u>, No. 5:19-CV-190-D, 2020 WL 3866669, at *7 (E.D.N.C. June 9, 2020) ("treatment [n]on-compliance may be intentional or a symptom of mental illness[,] . . . [s]o citing . . . non-compliance, without exploring the reasons underlying it, offers little in the way of substantial evidence to uphold the RFC determination.") (citing <u>Pate-Fires v. Astrue</u>, 564 F.3d 935, 945–46 (8th Cir. 2009) ("[N]oncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself, and, therefore, neither willful nor without a justifiable excuse. . . . Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of the rationality to decide whether to continue treatment or medication.")), <u>report and recommendation adopted</u>, 2020 WL 3840510 (E.D.N.C. July 8, 2020). Furthermore, SSR 16-3p requires the ALJ to consider possible reasons for failure to comply with treatment before finding an individual's symptoms inconsistent with the evidence of record on that basis. 2017 WL 5180304, at *9–10 (Oct. 25, 2017).

<u>Howe v. Kijakazi</u>, No. 7:22-CV-66-FL, 2023 WL 5363719, at *5 (E.D.N.C. July 31, 2023).

Here, the ALJ determined that "the objective medical evidence supports that when [Plaintiff] is compl[ia]nt with his medications and compl[ia]nt with his doctor's instructions to

10

Case 1:24-cv-00307-JEP    Document 14    Filed 09/30/25    Page 10 of 16

not self-medicate with beer, his condition significantly improved to allow him to perform work as noted in the [RFC]." (Tr. at 32.) However, at no point did the ALJ explore the reasons for Plaintiff's non-compliance. This failure is particularly problematic in the present case, which involves only mental impairments, including bipolar disorder, schizoaffective disorder, and alcoholism, all of which may impair rational decision-making. (Tr. at 23.) Moreover, the record chronicles that Plaintiff's providers adjusted his medications many times throughout the period at issue in an effort to address his ongoing problems with depression, manic episodes, anxiety, anger, insomnia, paranoia, and auditory hallucinations, as well as side effects from the medications themselves. Although Plaintiff did experience some brief periods of improvement when compliant with his treatment advice, he also required inpatient psychiatric care on at least four occasions during the alleged disability period, with ongoing hallucinations, paranoia, and manic behavior. The record further reveals that, in between appointments and hospitalizations, Plaintiff titrated his medications up and down, sometimes at the advice of his providers and sometimes on his own, in an apparent attempt to better control his symptoms. (Tr. at 35.) These records generally support Plaintiff's contention that the medication would work for a time but would then stop working as well, requiring ongoing adjustment, with significant deterioration after each hospitalization. Thus, it is not clear that there is even substantial evidence that Plaintiff was noncompliant, or whether the medication simply stopped working over time. Moreover, even if there were periods of medication noncompliance, the ALJ never addressed whether Plaintiff's non-compliance was (1) a willful act or (2) a manifestation of his mental illness, particularly the paranoia and disordered

thinking associated with his schizophrenia. Without this analysis, substantial evidence fails to support the ALJ's decision.

Similarly, the ALJ focused extensively on Plaintiff's use of alcohol (Tr. at 56, 57, 58-59, 69, 29, 31, 35), and the record reflects that Plaintiff used alcohol at times "in an attempt to self-medicate" as noted by the Consultative Examiner. (Tr. at 545.) The ALJ therefore discounted Plaintiff's hospitalizations and significant mental health symptoms to the extent Plaintiff consumed alcohol. However, the ALJ did not undertake the required analysis for evaluating cases involving alcoholism. Specifically, a claimant cannot be considered disabled for Social Security purposes if alcoholism and/or drug addiction is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). To determine whether this is the case, the regulations provide as follows:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(b). In other words, § 404.1535 describes a two-step process, which has been further codified and clarified in Social Security Ruling 13-2p. <u>Social Security Ruling 13-</u>

2p, Titles II And XVI: Evaluating Cases Involving Drug Addiction And Alcoholism (DAA), SSR 13-2p, 2013 WL 621356 (Feb. 20, 2013) ("SSR 13-2p"). As part of that two-step process, an ALJ "must *first* make a determination as to disability by following the five-step sequential evaluation process, 'without segregating out any effects that might be due to substance use disorders.'" Piccini v. Comm'r of Soc. Sec., No. 13-CV-3461 AJN SN, 2014 WL 4651911, at *12 (S.D.N.Y. Sept. 17, 2014) (quoting Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003)). If the ALJ finds the claimant disabled based on symptomology alone, he must then follow the five-step sequential analysis a second time to determine "whether the claimant would still be considered disabled if [she] stopped abusing drugs or alcohol." See Piccini, 2014 WL 4651911, at *12.

In this case, the ALJ never explicitly considered the materiality of Plaintiff's substance abuse disorders as prescribed by 20 C.F.R. § 404.1535(b) and SSR 13-2p. The ALJ clearly included alcoholism among Plaintiff's severe impairments at step two of the sequential analysis, but ultimately concluded that the records "do not show continuous and heavy substance abuse to such a point that the alcohol abuse is a contributing factor to his disability." (Tr. at 38.)[6] The ALJ nevertheless repeatedly considered Plaintiff's use of alcohol in

---

6 . . . [B]efore evaluating whether polysubstance abuse is a contributing fact to a finding of disability, the ALJ must first conduct the regular five-step disability inquiry to determine if a claimant is disabled, including as part of this inquiry the impact of any alcoholism or drug addiction. It is only after that point, if the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," that the ALJ then proceeds under § 404.1535 to determine whether the claimant "would still [be found] disabled if [he or she] stopped using alcohol or drugs." 20 C.F.R §§ 404.1535, 416.935; see Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001); Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001); Fennell v. Astrue, No. 4:09–3051–JFA–TER, 2011 WL 1049094, at *4 (D.S.C, Mar. 21, 2001); Puffenbarger v. Commissioner, No. 1:09CV77, 2010 WL 3521583, at *3 (N.D.W. Va. Sept. 7, 2010). Stated another way, if the ALJ finds that a Plaintiff's condition is disabling, he is then required to determine whether the Plaintiff's alcohol and substance abuse was a contributing factor material to the determination of disability, as disability due to drug

discounting the symptoms of his bipolar disorder and schizophrenia, and "it is not clear from the ALJ's decision that he actually went through the full five-step sequential evaluation first with an eye 'strictly [on the] symptoms, not [the] causes,'" as required by the regulations. Morales v. Colvin, No. 13 CIV. 06844 LGS DF, 2015 WL 2137776, at *25 (S.D.N.Y. May 4, 2015) (quoting Newsome v. Astrue, 817 F. Supp. 2d 111, 134 (E.D.N.Y. 2011)). Significantly, despite noting Plaintiff's hospitalization for significant psychiatric deterioration and ongoing psychiatric symptoms, the ALJ discounted these symptoms based on the objective evidence from examinations when Plaintiff was not using alcohol, and concluded that "the objective medical evidence supports that when [Plaintiff] is compl[ia]nt with his medications and compl[ia]nt with his doctor's instructions to not self-medicate with beer, his condition significantly improved to allow him to perform work as noted in the [RFC]." (Tr. at 32.)[7] Thus, it appears that the ALJ's focus on alcohol abuse as a "cause" of Plaintiff's mental health symptoms led him to improperly discount the evidence of disabling psychiatric symptoms in the record. At the very least, it is "not entirely clear that the ALJ would have . . . reached the same conclusion had he adhered to the regulations." Morales, 2015 WL 2137776, at *27.

---

addiction and alcoholism is not a proper basis for an award of benefits under the Social Security Act if the addiction is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(c), 1382c (a)(3)(J); see also 20 C.F.R. § 416.935. See also Farkas v. Astrue, No. 11–242, 2012 WL 750547, at * 2 (M.D. Fla. Mar. 8, 2012) ("The Regulations make clear that a finding of disability is a *condition precedent* to the application of [the law requiring a determination of whether alcohol or drug addiction is a contributing factor material to the determination of disability]") (emphasis added).

Hundley v. Colvin, No. CV 9:14-4115-BHH-BM, 2016 WL 423548, at *5 (D.S.C. Jan. 12, 2016), report and recommendation adopted, No. CV 9:14-4115-BHH, 2016 WL 404075 (D.S.C. Feb. 3, 2016).

[7] Notably, at least some of his hospitalizations reflect no alcohol use prior to the hospitalization (Tr. at 1055), and others reflect the potential that increased psychiatric symptoms came before and potentially triggered the alcohol use that then caused further deterioration. These are the types of issues that would be more fully and appropriately considered using the process set out in the regulations and in SSR 13-2p.

"The Court is mindful that, when the proper legal analysis is followed, the ALJ may conclude that substantial evidence supports a finding of no disability. But to assume that conclusion 'creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'" Piccini, 2014 WL 4651911, at *16 (quoting Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998)). Accordingly, upon remand, "[t]he ALJ must base his initial disability determination on substantial evidence of [Plaintiff's] medical limitations without deductions for the assumed effects of substance abuse disorders." Brueggemann, 348 F.3d at 694. Then, and only then, may the ALJ separately determine whether Plaintiff's substance abuse constitutes a contributing factor material to that determination. See also Hundley, 2016 WL 423548, at *5, *7 (similarly concluding that remand was required so that substance abuse could be properly evaluated using the process set out in SSR 13-2p). [8]

---

[8] The Court notes that in determining materiality in the context of other mental disorders, SSR 13-2p provides additional guidance:

> 7. *What do we do if the claimant's co-occurring mental disorder(s) improve in the absence of DAA?*
> a. Many people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA. We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.
> b. To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.
> c. We may purchase a CE in a case involving a co-occurring mental disorder(s). We will purchase CEs primarily to help establish whether a claimant who has no treating source records has a mental disorder(s) in addition to DAA. See Question 8. We will provide a copy of this evidence, or a summary, to the CE provider.
> d. We will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.

15

Case 1:24-cv-00307-JEP    Document 14    Filed 09/30/25    Page 15 of 16

Thus, remand is required in light of the ALJ's disregard of Plaintiff's psychiatric symptoms based on a lack of "objective medical evidence," particularly the lack of objective medical evidence when Plaintiff was compliant with his medications and not using alcohol, reflecting an apparent requirement of objective medical evidence in evaluating Plaintiff's symptoms and a related failure to consider the reason for medication noncompliance and failure to undertake the proper analysis for considering Plaintiff's use of alcohol.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability be REVERSED, that Defendant's Dispositive Brief [Doc. #13] be DENIED, that Plaintiff's Dispositive Brief [Doc. #12] be GRANTED, and that this action be REMANDED for further consideration in accordance with the directives set out herein.

This, the 30th day of September, 2025.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge